v. Mohamed Ali and all. All right, counsel. You are Mr. Nixon? Yes. Please step forward. Identify yourself as well as the party you represent. My name is Charles Nixon. I represent Clara F. Azamiefakhrie. She's the plaintiff at the line. If I might, I'd like to call her Clara, just because the name is correct. Yes, we'd appreciate that as well. So if the court please, counsel, you will see, due to my wonderful lenses that were implanted, that I have to have a certain distance in order to read anything. Please forgive me. And if I could, I'd like to reserve about three or four minutes for rebuttal. In Kruger v. Storer, which is 222. Well, counsel, I will say this, that we know the case law, and you really don't need to recite that for us. But what you do need to do is weave in your argument in light of the case law. And I will say that it looks to me that your entire argument is grounded or founded on the illicit nature of the power of attorney. And once the trouble is, we're dealing here with a purported good faith purchaser, an individual who is unfamiliar with the power of attorney, didn't take title directly through the power of attorney. But you're seeking to impose some sort of burden on this Mr. Ali that he has to check the recorder's documents to confirm that the title through whom he received, that is the investment LLC, was properly conveyed to him. And I'm unaware of any case that imposes that sort of burden, because it seems to me that you're basically destroying whatever, the protection that good faith buyers have. Why doesn't the good faith purchaser title apply to Mr. Ali? Well, it does not apply, certainly for one reason. It's a forgery. But what's the forgery? The power of attorney. Okay. Did Mr. Ali see the power of attorney at closing? I don't know if he personally looked at it. Why would the power of attorney be present at his closing? Well, it's certainly part of the record. When you say record, what kind of record are you speaking about? The recorder of deeds record. And the recorder of deeds records go back, well except for the fire, until a patent or whatever from the United States government. But will you concede that at closing, at closing, when Mr. Ali received title, he has only certain documents in front of him, as does the title company, and the power of attorney was not one of those documents? Well, I don't know if it would be or not. If you notice... Have you ever done a real estate closing? Oh, I certainly have. Have you ever seen a document, have you ever seen a document that tracks the title from the individual that you are not buying from, the previous owner, at closing? He's buying from Warner's LLC. The deed that Warner got states on it, as it's signed by Lyda Mullen, the daughter, as attorney in fact. If you notice the recording order at the previous closing, Mr. Robles, the closer, on the first page, on the power of attorney, marked for the recorder, one of two. That was on the power of attorney, which is the first. Followed by the deed, which depends upon the power of attorney. This is the chain of title. I believe this probably should have been in the file. Both of those, because the power of attorney, I mean the deed that says attorney in fact, needs to be vouched for, of record. Mr. Nixon, on the deed itself, is it... I don't have my appendix here with me, but on the deed, transferring to the first purchaser, not Ali, is there a signature, Clara, and her last name, by... Lyda Mullen. Attorney in fact. Yeah, and she wrote attorney in fact, that was written there. And so that's right on the deed. That certainly is part of the packing. But as a title agent, now of course... But is the power of attorney... Was this power of attorney filed in the recorder's office? Yes, it is, of course. And the one of record shows the record. Well, the one that we have in this, you know, in the briefs, I mean, your opponent points out that the original has never, ever been produced. Or even a copy, which you were sending back copies, but the one that's in your reply brief, if you want to take a look at that... Right, that's a certified copy, certified copy of the recorder. If you want to take a look at that, what is this one? Because this one has Ginger Dell on it as a witness. It has a signature that appears to be, you know, Clara's. But the daughter... What is this Exhibit A in your reply brief? This is a certified copy of the document that... Well, this is only one page. ...produced, and that the title company passed title on, or issued a title insurance policy on. The facts was sometime before. This was all facts back and forth someplace. Didn't the trial judge... And it was accepted in that state. Didn't the trial judge basically say, you just didn't establish ejectment? Didn't the trial judge basically conclude in his finding that you did not establish the elements of ejectment, starting with possession and title, those two? He said you didn't establish possession. These are two long opinions, where the brief that was submitted by myself and my counsel, the two briefs, were also submitted on disks, and the disks were copied and spliced into the opinion. And the end of the opinion seems to say that he made much of the defects, and it doesn't say anything else about that, but says, well, but... Don't you need an independent handwriting analyst to say this was a forgery? The notaries can't give opinions about that, and they didn't give opinions. They said the documents were pretty much intact when they notarized them, but don't you need to show that the power of attorney was in fact forged? We did. All right. Well, that's where the court took issue. Now, you're indicating, and they do say, well, you need to have... Well, did she ever testify this is not my signature? She testified she signed nothing... But did she... Okay. All right, let's say that from that you can infer she didn't sign anything. She can't read, and she can't read English. I'm going to give you that. Let's give you... Mr. Nixon, let me ask you a question. I'm going to give you this point. We're going to agree with you that she said she never signed anything. So let's assume that testimony is true. Now, the next step is, don't you, according to the cases, have to show that the signature that's on there, it's not enough for her to say, I didn't sign anything. Don't the cases say you need to have an independent expert say that this signature is a forgery? It depends whether or not the acknowledgement is regular and prepared according to statute in compliance with statute. The acknowledgement certainly is not. It has blanks. Our statute says it's supposed to be fully completed before the notary hands it over. Arizona law, we have that in the record. It says the same thing. And so it is not done in compliance with law. It has whiteout. In the most critical portion, the identification, the name of who the principal is, is erased on one of the two pages and is blank and may have been erased on that page too but erased better. So it does not vouch. And it is not prima facie proof of title. That's what the first case I was mentioning states. So it is resolution trust versus hardesty. Both of them say, if it is in regular order according to statute, it's prima facie proof that the deed is good. And Mr. Nixon? Clara's deed was, and if you look at it, prepared according to statute in compliance with statute and the acknowledgement is regular. She proved for prima facie case that she had title. Matter of fact, if she couldn't, he wouldn't have title. Wait a minute. Let's assume for a moment that everything you say is true. Okay. How about the defendant's protected status as a bona fide purchaser? Well, we proved forgery. The cases are clear. A forged document is void and never passes title. And a bona fide purchaser for value is no defense whatsoever. Those cases are cited in the brief. Well, let me ask you this regarding that void versus voidable issue that you acknowledge in your brief. If you had not, wasn't that one of the issues before the circuit court judge whether you had in fact established that the document was a forgery? So that was an issue before the judge. And if the judge had said no, that would make the power of attorney not void because you need a conclusion that it was in fact forgery before it can be deemed to be void. It was at best voidable. And the question is did you carry your burden to establish that in fact it was void? And the trial judge said no. The thing is this, sir. The judge didn't rule on that issue. He went on to say no. Right, he didn't rule on that issue because in fact if this had been a case involving Clara versus the LLC then I can understand where your attack is going to be on the power of attorney because LLC should never have relied on that power of attorney that on its face has markings that suggest that it is not certainly in compliance with the statute as you indicate. But this isn't the case involving LLC. This is an ejectment action going back to Justice McBride's point. This is an ejectment action that you're seeking to remove Mr. Ali from the possession of the building without establishing that Mr. Ali had any knowledge or any reason to believe that what the title that he received at closing was invalid. The statute of limitations is 40 years on title. The question is, sir, what party should you choose? The practice may be with the title companies is they give a package of the most recent papers to look at. But still, the statute of limitations and of course the payment of taxes would be seven years. That did not pass. Alright, sir, you'll need to wrap up. Alright, you'll get two or three minutes for rebuttal. But go ahead and wrap up your initial argument. If I could. Certainly, my view is and even though the court below did not rule that I did or did not prove forgery, he proceeded as though I had proved something. That there was something wrong with the power of attorney. He then said and ruled that, well, good faith is a defense when it's not unless there's proof or whatever that there's no forgery. I think that your honors can look at it with the testimony of the two notaries on various forged documents that I would say are forged. That when that left the notary the names of the principals were not erased. That the record kept in Arizona which is required by law that both notaries that testified in Arizona said, yes, we have it. They produced the document which is the notary journal about these documents and they both showed that Ryda Mullen was there and in the one case, Ginger Dell who also had $39,000 for her signature, I guess on the forged deed whatever she got it for Illinois license numbers are there, the identification numbers there's nothing for Clara and they testified Clara wasn't there. And so I think forgery is proof. Alright, you have 30 seconds, sir. And if forgery is not proof, still if you look at the recorded deed records as the cases say the statute says that you were bound, the buyer is bound by what's a record within the statute of limitations. The buyer was held and is held to be bound and chargeable with the his title agent's review of the title record. And if that review does not show a title defect he does not get good title. What's title insurance for? I mean it's there for a reason. You'll get time for rebuttal. We noticed that there's a joint brief filed by the two parties. Have you split up your time or will there only be one person? There will be one of us. Alright, you can step forward and identify yourself. If I may please the court, that one person is myself. I'm Tim Breams. I represent the defendant, Muhammad Ali. Mr. Breams, as far as the consolidated order, what was that second order in 10-0289? Because your brief, did you file a second brief or just on the 0-9? No, we filed just one brief. And what is that second brief? It's a joint brief. What is the consolidated? Why were there two appeals? My impression of the reason that there were two appeals is because after Judge White made his ruling in this case the plaintiff filed a notice of appeal. However, at that time there was still pending a reconsideration. No, there was pending another portion of the ruling by the mortgage lender against Mr. Ali. And so, Judge White's ruling was not a final and appealable order without some 304A language. So, after the notice of appeal was initially filed then the plaintiff asked for 304A language. Then a second amended notice of appeal was filed and the clerks in the appellate court I believe assigned two different numbers. Right. I will introduce my co-counsel that is Mary Beth Wheeler. She represents the defendant mortgagee and she's happy to answer any questions or argue on behalf of the mortgagee if you have a unique question that relates to the mortgage interest in the property. Just so it's clear, there's no dispute or is there a dispute regarding the nature of the power of attorney that was used to obtain title from Clara by LLC? The power of attorney was in fact a forged document? No, that's not. There's a definite dispute. It was not proved. Did it become an issue other than by the plaintiff? Was it an issue that the trial judge had to rule on in order to issue its decision whether the ejectment case had been made up? It was not an issue that the judge even had to rule on because not only is the plaintiff asking this court to upset a well-established protection afforded by law to bona fide purchasers. Why don't we start there? Is Mr. Allee a bona fide purchaser? He definitely is. What makes him so? It makes him a bona fide purchaser is that he paid $340,000 for this property. Money alone can't do it. Right, but that is one element, the payment of value. And secondly, he has to pay that value without notice or knowledge of the plaintiff's claims in this case. And they stipulated that he had no knowledge. He didn't know that in 2000 Clara vacated this property. He didn't know that shortly after she vacated it that enabled an arsonist to come in without anyone in the property and torch the property. Nor did he know that two weeks later another arsonist, perhaps the same one, came in and torched the property. Nor did he know that Clara then appointed her daughter as her agent to adjust the loss. Nor did he know that she in adjusting the loss first got payable to Clara $115,000. Then the property is sold by a deed which does bear a signature that is spelled Clara Osimofakri. But doesn't the deed also say Clara by? It does. There was a power of attorney out there. The notary does not. There was a power of attorney out there for her to adjust the insurance claims. Correct. Where is that? Is that in the record at all? It is. And where can that be found? There is a copy in the appendix to the plaintiff's brief. And that is Page what? A. Of the appendix. Right. That's the power of attorney to adjust the insurance claim for the Arsons. It is. And as a result of the sale of the home to North Campbell, that produces another $255,000. Those proceeds went for the benefit of either Clara or her family. In large part, it paid off her mortgage. Since 2001. Aren't these all arguments going to your affirmative defenses though? These arguments are all addressing what They're addressing the BFP status of Mr. Alley. Okay. They are. Yes, they are. He had no knowledge of any of this. Now, they also relate to our argument that the law says that even if you get beyond the fact that the plaintiff came woefully short of the extremely high burden to prove forgeries in this case. Well, the only one that is even at issue is the power of attorney. There's no claim that the deed was a forgery, is there? No. I mean, there was no testimony. There was no claim that the deed was a forgery. There was no testimony about the deed, really, as far as, you know. Although she testified she never signed anything after a certain point. Yes, but she never testified that that is not my signature on the deed. She didn't testify as far as any document. If it is a forged power of attorney, would it make any difference under the Illinois Power of Attorney Act? It would not. If it's, in fact, that act has been amended in relation to case law prior to the amendment that said third parties cannot rely on a forged power of attorney, and so the act was amended to provide that third parties can, in good faith, rely on a power of attorney, even if the document is forged. And you're relying on the Amcorp case? Yes. And the amendment to the power of attorney case. But the Arizona... Why should that be allowed? If this is a forgery, why should the third party be able to benefit from it? Because of the law wants to, in particular as it relates to real estate title, the law wants to protect the integrity of real estate titles. And this is... And the law imposes a burden on owners to protect their own property. You have to know what's going on with your property. And if you don't, you allow it to get sold out from under you, the law says we're not going to help you. And that is the cases of Hugo and Van Allman that says that if you plaintiff enabled this fraud that you're complaining about, and Mr. Ali and Impact Funding had no participation of it, no even knowledge of it, and the law is called upon to say, okay, we... Who has to suffer? Who has to suffer? It has to be the plaintiff. Well, she never paid... I don't think so, but... The mortgage was paid off. Mortgage was paid off. She never paid any taxes. Hasn't paid real estate taxes since prior to 2001. And she never sued any of her children or Ginger Dell or anyone else or any of the people that received checks from any of these transactions. No. Didn't the court... Just finally, didn't the court decide this without ever reaching any of your affirmative defenses? Didn't the court find that she did not establish the elements of an ejectment action? No possession, no title. Isn't that what he held? Or did he not? You tell me. I believe he did make those findings that she did not prove the elements of ejectment. But I do also believe that the court recognized the fact that Mr. Ali is a bona fide purchaser. Even if this document were forged? Yes. Now, he did grant a motion. He granted our motion for finding in the defendant's favor after the plaintiff rested. And so, he never got to the defendant's case. We never got to closing arguments in this case. Did you present any evidence, though? We did, yes. But he decided that he was deciding it. He decided. He granted our motion. My understanding is that there are two ways of ending a case after the plaintiff's. One is where as a matter of law, and the other is where there may have been a prima facie case, but the cross-examination by the defendant of the witnesses on behalf of the plaintiff so undermined the initial testimony that the prima facie case dissolves. Do you know, do you agree with that, and which of the two prongs did the trial judge rely on? I do agree with that, and I believe as much as I'd like to say it was Ms. Wheeler's and my brilliant cross-examination, I believe that the judge was finding that it was that they fell woefully short of meeting their burden of proof in this case. So no prima facie case was established? Correct. That's my belief. You can wrap it up. I'll wrap it up with concluding that as a result of these arsons, the plaintiff and her family walked away with $370,000 in benefit to them, and now they want the house back. They want Mr. Ali and his family out. They want impact lending to lose all of its interest in the property, and they want in addition to keeping the $370,000, the house back. The law cannot permit that. Judge White must be over. Thank you. Mr. Nixon, two minutes, please. Number one, the statute says only matters germane to title may be brought in an ejectment case. To bring a third-party action against her children would be a ratification of the contract and would destroy her right to ejectment. Counsel asked, and I have no objection to join Lyda Mullen as a party in this case, and I told him he can join anybody he wants, but I don't believe I can. When you read the statute, it says only those things germane to title. Now, certainly, I suppose if you include Lyda Mullen and his family, yes, they walk away with substantial money, not $300 some thousand dollars. She didn't get that much.  and turned around next week and Warner sold it for $340,000. So it's not exactly that this money came to them. What Clara got was $14,000, which she believed to be insurance proceeds from the fire. The rest was gone. If she were to file suit against to recover the money from Ginger Dell, God knows if anybody could get that $39,000, the $20,000 or so that Lyda paid off apparently a Visa card with, and the other thousands to people we don't even know, it would be a ratification. How could you in good faith say we're going to ratify this deal and see if you can collect a few dollars from somebody? How about the Illinois Power of Attorney Act in the Amcorp case? I understand. And I would say this. That case was dicta and that was decided under another statute with the exact same language in Johnson v. Edwards, the old bank. So we should totally disregard that. Well, I mean, I suppose you should consider it. And if that's what you want to say, that no matter how bad the power of attorney is, no matter how looking at it, you'd think a child wouldn't accept it. I mean, don't forget both Broglies and Klaufman working for the title company, high school grads that were in charge apparently of these closings said at trial when they looked at the power of attorney, neither of them would approve it. Well, if we don't consider the Amcorp case, we still have to interpret that statute on our own, don't we? There's a change in the statute. Wasn't the statute designed to protect third-party purchasers? Bonafide purchasers? So isn't Ali one of those? The statute is designed, the amendment is designed to protect. Right. Right. I think, yes. Well, I don't know about purchasers. It was brought by the Bank Association to protect banks so they can give people's monies away. But as Edwards said, they have to at least have due diligence, they have to do due care, they have to have something besides just give it away on a piece of trash. You know, Your Honor, you talked about this is facts, the type is different, it's blurry, it's hard to read. Her name is misspelled in the power of attorney. I mean, you know, and Robles said at trial I noticed that maybe I would have fixed it or corrected it. How he does that, I don't know, but he would have just somehow fixed it, I guess, write an E in there, I don't know what the title is supposed to do in the closing. You'll need to wrap up. I just leave it that this is a it's a travesty that anybody would accept this as a power of attorney. You have to have some standard, the standards our cases have held are due diligence, ordinary diligence in reviewing title documents. If we throw that out the window, then our deeds and our security of our titles are really in trouble. Mr. Nixon, Mr. Green said that you stipulated that Mr. Ali, in the stipulation of facts presented to the trial court before trial, you stipulated that Mr. Ali had no knowledge that the power of attorney was a forgery. How do you respond to that? I said, and I'd like to review it, I said that he had, I had no reason to believe he had personal knowledge himself. But under the statute of cases you would say it would be constructive. He, you know, stipulated he was a good-faith purchaser. I mean, he's not a bad man. He's not some kind of an evil guy. I mean, I might say something about Warner or somebody else, but not Mr. Ali. He's a human being. And the condition of the power of attorney should have put him on notice. That's what you're saying. That's what I'm saying, because anybody that looked at it should say yes. All right. Well, thank you very much, sir. Case will be taken under advisement.